UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DISCOVISION ASSOCIATES,

              Plaintiff,

     v.

FUJI PHOTO FILM CO., LTD., a Japanese
corporation; FUJIFILM U.S.A., INC., a New
York corporation; FUJIFILM RECORDING
MEDIA MANUFACTURING U.S.A., INC., a
Delaware corporation; and FUJI MAGNETICS
GMBH, a German corporation,

              Defendants.

Index No.:  07-Civ.-6348 (PAC)

---

**BRAUN DECLARATION EXHIBIT 1**

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

# NON-EXCLUSIVE PATENT LICENSE AGREEMENT
## FOR
## DISC PRODUCTS AND RECORDABLE MEDIA

This AGREEMENT is made effective this 1st day of January, 1995, by and between DISCOVISION ASSOCIATES, a joint venture subject to the State of California partnership law, having a place of business at 2355 Main Street, Suite 200, Irvine, California 92714, United States of America, (hereinafter referred to as DVA) and FUJI PHOTO FILM CO., LTD., a Japanese corporation, having a place of business at 26-30 Nishiazabu 2-chome, Minato-ku, Tokyo 106, Japan (hereinafter referred to as LICENSEE), who agree as follows:

**Section 1.0.   Recitals**

1.1    DVA has the right to grant licenses under certain DVA patents relating to the design, manufacture, and use of optical disc products and recordable media.

1.2    DVA is prepared to grant non-exclusive licenses under such patents on reasonable terms and conditions to financially sound and commercially responsible applicants.

1.3    LICENSEE has produced and sold and intends to continue producing and selling products which may embody patented inventions covered by such DVA patents.

1.4    DVA has offered LICENSEE a license under any single one or more of its patents, the availability of such license under any one or more of DVA's patents being in no way conditioned on the need for LICENSEE to take a license under any other of DVA's patents.

1.5    The parties, having examined the relative value to one another of avoiding potential disputes over infringement of DVA patents and determination of royalties due on past, present and future sales, have independently concluded, in the interest of convenience of the parties, that their respective business interests will be best served by LICENSEE taking a license under the terms and conditions of this Agreement.

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

Section 2.0. Definitions

2.1     "Information Storage Medium(s)" shall mean any record carrier primarily designed to store and/or record any type of information.

2.2     "Disc(s)" shall mean any pre-recorded, non-recordable and non-erasable Information Storage Medium in the shape of a disc and having information recorded thereon on one or both sides thereof, which information is recoverable using optical detection means.

2.3     "Digital Disc(s)" shall mean a Disc having recorded thereon digitally encoded information not containing information intended to produce visual images with user perceivable motion. Digital Discs shall include, but are not limited to: Discs commonly known as compact discs (CD), CD-single discs (CD-3 or CD-5), CD-ROM discs, CD-ROM-XA discs, non-recordable audio mini discs and CD-G discs (if incapable of producing visual images with user-perceivable motion).

2.4     "Video Disc(s)" shall mean a Disc having recorded thereon any information intended to produce visual images with user perceivable motion. Video Discs shall include, but are not limited to:   Discs commonly known as laser discs (LD), compact discs-video (CD-V) and compact discs-interactive (CD-I).  If DVA and LICENSEE cannot agree as to whether a particular Disc is a Digital Disc or a Video Disc, then such Disc shall be deemed to be a Video Disc.

2.5     "Master Disc(s)" shall mean any recordable Information Storage Medium primarily designed for use in any process to eventually produce a Disc by any transfer process whereby the information from all tracks of a Master Disc is transferred substantially simultaneously to an Information Storage Medium to form a Disc.

2.6     "Recordable Media" shall mean any Information Storage Medium, other than a Master Disc, capable of having information recorded directly thereon, which information is recoverable using optical detection means. Recordable Media shall include, but is not limited to, write-once media (for example, ablative media), magneto-optical media, phase-change media, recordable mini discs, recordable compact discs and rewritable compact discs. For purposes of this Agreement, a Master Disc shall not be considered a Recordable Media.

2.7     "Licensed Product(s)" shall mean any one or more of the following: Digital Discs; Video Discs; and Recordable Media.  In the event of a disagreement concerning Licensed Products, the parties shall negotiate in a good faith effort

7

to resolve such disagreement. Such negotiations shall not require more than one meeting per calendar year.

2.8     "**Manufacturing Apparatus**" shall mean apparatus for use in the fabrication of **Licensed Products**, including apparatus used in performing quality assurance procedures and/or testing of **Licensed Products**.

2.9     "**Manufacturing Process(es)**" shall mean any method or process, including related apparatus, used in the fabrication of **Licensed Products**, including process steps directed to quality assurance procedures and/or testing of **Licensed Products**.

2.10    "**Licensed Patent(s)**" shall mean all patents owned by DVA as of the effective date of this Agreement, including utility models and design patents, and any patents, including utility models and design patents, issuing from pending patent applications owned by DVA as of the effective date of this Agreement, directed to **Licensed Products** and/or any **Manufacturing Apparatus** and/or any **Manufacturing Process**, under which patents and patent applications (as well as divisionals, continuations, continuation-in-part applications, reissues, reexaminations and extensions thereof) DVA has, as of the effective date of this Agreement, the right to grant licenses to LICENSEE of the scope granted herein, provided however that such grant, or the exercise of rights under such grant, will not result in the payment of royalties or other consideration by DVA to third parties (except for payments to **Affiliates** of DVA and payments to third parties for inventions made by said third parties while employed by DVA or any of its **Affiliates**). Patents which have issued and are licensable by DVA are set forth in Appendix A. DVA shall notify LICENSEE on at least an annual basis as to the issuance of any new patent to be included in Appendix A.

2.11    "**Transfer(s)**" (**Transferred**) as used herein shall mean (i) deliver(ed) to others (including for export) other than by sale, regardless of the basis of compensation, if any, (for example, by consignment, by gift or by transshipment through an intermediate country or territory such as Switzerland, Hong Kong, et cetera) and/or (ii) sell (sold) in combination with other products.

2.12    "**Type Number**" shall mean any combination of numbers, letters, and/or words used to identify a particular type or model of **Licensed Product**.

7

2.13    "**Affiliate(s)**" shall mean any corporation, company, or other business entity controlled by a party to this Agreement.  For this purpose, control means direct or indirect beneficial ownership of greater than fifty percent (50%) of the voting securities or greater than fifty percent (50%) interest in the income of such corporation, company, or other business entity.

2.14    "**Arm's Length Trade**" shall mean a sale, lease or other commercial transaction between unaffiliated parties having an adverse economic interest.  After completion of an **Arm's Length Trade**, a party thereto will derive no further economic benefit from subsequent transactions by another party thereto with respect to the goods involved in such **Arm's Length Trade**.

2.15    "**Net Selling Price**" shall mean the invoice price after discounts actually allowed for a **Licensed Product** sold in **Arm's Length Trade** by LICENSEE or its **Affiliate**, such price not to include:  (1) packaging costs for such **Licensed Product**; (2) insurance fees and packing and transportation charges as invoiced separately to a third party; (3) duties and sales taxes actually incurred and paid by LICENSEE in connection with delivery of such **Licensed Product**; (4) the cost of any copyright license fee paid in respect of information stored on the **Licensed Product**; and (5) mastering charges necessary for the manufacture of the **Licensed Product**, which mastering charges are invoiced separately to a third party.  In respect of a **Licensed Product** used or leased by LICENSEE or its **Affiliate** or sold in other than **Arm's Length Trade** by LICENSEE or its **Affiliate**, the Net Selling Price shall be deemed to be equal to the average **Net Selling Price** as defined above for the same or equivalent **Licensed Product** sold in **Arm's Length Trade** during the then current accounting period.  In the event there are no sales in **Arm's Length Trade** during an accounting period, DVA and LICENSEE shall attempt to agree upon an amount to be regarded as the **Net Selling Price** for such accounting period.  If DVA and LICENSEE do not so agree, then **Net Selling Price** shall mean the actual selling price to an ultimate consumer.  If a **Licensed Product** is not separately sold and is incorporated in, and forms part of, other apparatus, then the **Net Selling Price** of such **Licensed Product** shall be the **Net Selling Price** of the equivalent **Licensed Product** which is separately sold, or, if no such equivalent **Licensed Product** exists, shall be the price as aforesaid of such other apparatus multiplied by the ratio of the **Manufacturing Cost** of such **Licensed Product** to the **Manufacturing Cost** of such other apparatus.

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

2.16    "Manufacturing Cost" shall mean total cost of direct materials, direct and indirect factory labor and factory overhead determined in accordance with sound accounting principles.

## Section 3.0.  Non-Exclusive License Grant

3.1     DVA grants to LICENSEE a worldwide, non-exclusive, royalty bearing license under the Licensed Patents:

   3.1.1     to make, have made, use, lease (rent), sell and/or otherwise Transfer Licensed Products; and

   3.1.2     to make, have made, use, or have used Manufacturing Apparatus, and to use or have used Manufacturing Processes.

3.2     No license is granted by DVA to LICENSEE in this Section 3.0, either expressly or by implication, estoppel, or otherwise, other than under the Licensed Patents.

3.3     The license granted herein shall include a sublicense to LICENSEE's Affiliates, identified in Appendix B, which are LICENSEE's Affiliates as of the effective date of this Agreement.  LICENSEE shall pay and account to DVA for royalties hereunder with respect to the exercise by any Affiliate of LICENSEE of the sublicense granted to it hereunder.  Sublicenses will be granted to additional Affiliates of LICENSEE during the term of this Agreement upon receipt by DVA of written notices from LICENSEE setting forth the names and addresses of such additional Affiliates to be covered by this Agreement, provided each such notice is given before any sales of Licensed Products by the Affiliate named therein. Each Affiliate sublicensed under this Agreement shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of LICENSEE.  LICENSEE represents to DVA that it has the power to bind each such Affiliate to the terms and conditions of this Agreement and agrees to take whatever action is necessary to legally bind such Affiliates.  The sublicense granted to an Affiliate shall terminate on the date such Affiliate ceases to be an Affiliate.

3.4     Except as set forth in Section 3.3, LICENSEE is expressly not granted the right to sublicense third parties under this Agreement.

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

**Section 4.0  Release**

4.1    Upon payment of the consideration set forth in Section 5.6, DVA irrevocably releases LICENSEE and its **Affiliates**, identified in Appendix B, which are LICENSEE's **Affiliates** as of the effective date of this Agreement, from any and all claims of infringement of the **Licensed Patents**, which claims have been made or which might be made at any time, with respect to any **Licensed Products** used, leased, sold, or otherwise **Transferred** by or for LICENSEE or its sublicensed **Affiliates** before the effective date of this Agreement, to the extent such **Licensed Products** would have been licensed hereunder had they been manufactured, used, leased, sold, or otherwise **Transferred** after the effective date of this Agreement. This release shall not apply to any **Licensed Product** on which a royalty accrues after the effective date of this Agreement.

4.2    LICENSEE expressly represents that its **Affiliates** identified in Appendix B includes all of LICENSEE's **Affiliates** as of the effective date of this Agreement.

**Section 5.0  Royalties and other Payments**

5.1    LICENSEE shall pay, as hereinafter provided, earned royalties to DVA with respect to either of the following for:

   5.1.1    each **Licensed Product** for which LICENSEE is licensed hereunder in the country of manufacture; or

   5.1.2    each **Licensed Product** for which LICENSEE is licensed hereunder in the country of use, lease, sale or **Transfer**.

5.2    For the manufacture, use, lease, sale and/or **Transfer** of each **Licensed Product**, royalty shall be paid for only one country, namely, the country for which the total royalty is highest.

5.3    For each **Recordable Media** which is manufactured, used, leased, sold, or **Transferred** by or for LICENSEE and/or its **Affiliates** in any country, LICENSEE shall pay to DVA a royalty of two percent (2%) of the **Net Selling Price** of such **Recordable Media**.

5.4    LICENSEE shall pay, as hereinafter provided, royalties to DVA with respect to the following **Disc** products:

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

5.4.1    For each **Video Disc** which is manufactured, used, leased, sold and/or **Transferred** by or for LICENSEE and/or its **Affiliates** in any country, LICENSEE shall pay to DVA a royalty for:

    5.4.1.1    **Video Discs** having a diameter up to and including six (6) inches: four cents (U.S. $0.04) per side containing information; and

    5.4.1.2    **Video Discs** having a diameter greater than six (6) inches: twelve cents (U.S. $0.12) per side containing information.

    5.4.1.3    With respect to each of the preceding Sections 5.4.1.1 and 5.4.1.2, LICENSEE shall have the option of paying a royalty of three percent (3.0%) of the **Net Selling Price** for Video Discs manufactured, used, leased, sold and/or **Transferred** in any country.

5.4.2    For each **Digital Disc** which is manufactured, used, leased, sold and/or **Transferred** by or for LICENSEE and/or its **Affiliates** in the United States and/or Canada, LICENSEE shall pay to DVA a royalty for:

    5.4.2.1    **Digital Discs**, except CD-Singles: three cents (U.S. $0.03) per side containing information; and

    5.4.2.2    CD-Singles (CD-3 or CD-5): two cents (U.S. $0.02) per side containing information.

    5.4.2.3    With respect to each of the preceding Sections 5.4.2.1 and 5.4.2.2, LICENSEE shall have the option of paying a royalty of three percent (3.0%) of the **Net Selling Price** for **Digital Discs** manufactured, used, leased, sold and/or **Transferred** in the United States and/or Canada.

5.4.3    For each year during the term of this Agreement, for **Digital Discs** which are manufactured by or for LICENSEE and/or its **Affiliates** in any country outside of the United States and Canada and which are used, leased, sold or otherwise **Transferred** by or for LICENSEE and/or its **Affiliates** in any country outside of the United States and Canada, LICENSEE shall pay to DVA a royalty per disc side containing information computed, at LICENSEE's election, upon one of the following two bases:

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

5.4.3.1  A sliding scale as follows:

| | | |
|---|---|---|
| Up to and including 30 million per year | - | U.S. $0.0150; |
| Over 30 million to 45 million per year | - | U.S. $0.0125; |
| Over 45 million to 60 million per year | - | U.S. $0.0100; |
| Over 60 million to 105 million per year | - | U.S. $0.0075; |
| Over 105 million per year | - | U.S. $0.0100; |

For example, if in any year (beginning on the date of this Agreement and the anniversary of such date in future years) forty million one-sided **Digital Discs** are subject to the payment of royalties, the amount of royalties required to be paid shall be calculated as follows:

First 30,000,000 Discs at U.S. $0.0150 per Disc = U.S. $450,000
Next 10,000,000 Discs at U.S. $0.0125 per Disc = U.S.$125,000
                                      Total    U.S.$575,000

5.4.3.2  Instead of the sliding scale, a royalty of one and one-quarter cents (U.S. $0.0125) per disc side containing information thereon.

5.4.4  The election referred to in Section 5.4.3, once made, _cannot_ be changed during the term of this Agreement. The election shall be made in writing to DVA on or before the submission of the royalty report for the first accounting period in which royalties for such **Digital Discs** are to be paid.

5.5  No royalties shall be paid by LICENSEE for:

5.5.1  **Licensed Products** manufactured for LICENSEE by any other DVA licensee, so long as the other DVA licensee has fully paid and reported royalties to DVA on such **Licensed Products**.

5.5.2  **Licensed Products** manufactured by LICENSEE for any other DVA licensee, so long as the other DVA licensee has fully paid and reported royalties to DVA on such **Licensed Products**.

5.6  LICENSEE agrees to pay DVA, within sixty (60) days of the execution of this Agreement, the sum of Forty-Five Thousand United States Dollars (U.S. $45,000) as

7

additional consideration for the release granted LICENSEE in Section 4.0. This sum is not refundable and is not creditable toward royalties set forth in this Section 5.0.

5.7   If at any time legal restrictions in the country of LICENSEE's place of business set forth in this Agreement prevent the prompt remittance of part or all of the royalties or other payments to DVA set forth in this Section 5.0, LICENSEE shall upon DVA's written request perform the following:

    5.7.1   LICENSEE shall make such payments by depositing the amount thereof in local currency to DVA's account in a bank or other depository in such country; and

    5.7.2   LICENSEE shall assist DVA to obtain authorization to remit such payments outside such country in equivalent U.S. currency.

## Section 6.0   Accruals, Records and Reports

6.1   Royalties shall accrue when any **Licensed Product** with respect to which royalty payments are required by Section 5.0 of this Agreement is sold (as evidenced by bill or invoice), first leased, first put into use or **Transferred**, whether or not payment is received by LICENSEE. On sales or **Transfers** between LICENSEE and its **Affiliate** for resale or for further **Transfer**, the royalty shall accrue at the time of sale or **Transfer** to the **Affiliate**.

6.2   LICENSEE shall pay royalties and other sums of money due hereunder in United States dollars. All royalties for an accounting period computed on invoiced amounts in currencies other than United States dollars shall be converted directly into United States dollars without intermediate conversions to another currency at the Telegraphic Transfer Selling (TTS) rate quoted by either the Asian edition of the Wall Street Journal or the Sumitomo Bank of Tokyo, Japan at the close of banking on the last day of such accounting period (or the first business day thereafter if such last day shall be a Sunday or other non-business day). LICENSEE shall provide written confirmation of the quoted TTS rate directly to DVA with the royalty report.

6.3   LICENSEE's royalty reports shall include the following information:

    6.3.1   identification by **Type Number**, brand name and/or label name, product type (for example, video, digital, M-O, etc.), product diameter, **Net Selling Price** and quantity of each **Licensed Product** upon which royalty has accrued pursuant to Section 6.1;

7