FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

6.3.2   identification by city and country of the locations at which the **Licensed Products** identified pursuant to Section 6.3.1 were manufactured and, for **Discs**, identification of the countries of sale;

6.3.3   identification of the royalty basis elected by LICENSEE pursuant to the provisions of Section 5.0, the amount of royalties due for each **Licensed Product**, all information required to show how such amount has been calculated and the aggregate amount of all royalties due; and

6.3.4   identification by **Type Number**, brand name and/or label name, product type, product diameter and quantity of each **Licensed Product** manufactured by or for LICENSEE during the applicable accounting period which is exempt from royalty in accordance with Section 5.5, including the name and address of the other DVA licensee who manufactured or received the **Licensed Product**.

In the event that any of Sections 6.3.1 and 6.3.4 do not apply, LICENSEE shall so state as to each such section. In the event no royalties are due, LICENSEE's report shall so state.

6.4   LICENSEE's royalty report shall be certified by an officer of LICENSEE or by a designee of such officer to be correct to the best of LICENSEE's knowledge and information.

6.5   An accounting period shall end on the last day of each March, June, September and December during the term of this Agreement. The first accounting period under this Agreement shall be for a period commencing as of the effective date of this Agreement. Within sixty (60) days after the end of each such period, LICENSEE shall furnish to DVA a written royalty report containing the information specified in Section 6.3 hereof and shall pay to DVA all unpaid royalties accrued hereunder in favor of DVA to the end of each such period. LICENSEE shall bear and pay all taxes which are required by its national government, including any political subdivision thereof, as the result of the existence or operation of this Agreement, except any necessary, appropriate and required national income tax imposed upon royalties or other payments by the national government of LICENSEE. LICENSEE may deduct or withhold such national income tax from said royalties or other payments, provided LICENSEE furnishes DVA with a tax certificate or other document evidencing payment of such income tax.

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

6.6   LICENSEE shall keep separate records in sufficient detail to permit the determination of royalties payable hereunder. At the request of DVA, LICENSEE will permit an independent auditor and/or technical consultant selected by DVA, or any other person or persons acceptable to both DVA and LICENSEE, to examine during ordinary business hours once in each calendar year such records and other documents as may be necessary to verify or determine royalties paid or payable under this Agreement. Such auditor, technical consultant or other person(s) shall be instructed to report to DVA only the amount of royalties due and payable. If no request for examination of such records for any particular accounting period has been made by DVA within five (5) years after the end of said period, the right to examine such records for said period, and the obligation to keep such records for said period, shall terminate.

6.7   The fees and expenses of DVA's representatives performing any examination of records under Section 6.6 above shall be borne by DVA. However, if an error in royalties of more than three percent (3%) of the total royalties due is discovered for any year examined, then the total fees and expenses of these representatives shall be borne by LICENSEE.

**Section 7.0  Interest on Overdue Royalties and Other Payments**

7.1   LICENSEE shall be liable for interest at a rate of one and one-half percent (1.5%) per month compounded monthly on any overdue royalty or other payment set forth in Section 5.0 herein, commencing on the date such royalty or other payment becomes due. If such interest rate exceeds the maximum legal rate in the jurisdiction where a claim therefor is being asserted, the interest rate shall be reduced to such maximum legal rate.

**Section 8.0  Most Favored LICENSEE**

8.1   If DVA shall hereafter grant a license which grants the same rights concerning a **Licensed Product** as granted hereunder to LICENSEE for a particular country at a more favorable royalty rate than that set forth herein, then DVA shall notify LICENSEE thereof and LICENSEE shall be entitled to receive the same more favorable royalty rate for such **Licensed Product** for such particular country, subject to the same terms and conditions under which the more favorable royalty rate has been granted, provided that this Agreement shall be modified accordingly by written amendment, which amendment shall be effective only for the period the more favorable royalty rate is in effect under such license. The foregoing provisions of this Section 8.1 shall not apply if:

   8.1.1   DVA receives a grant of patent rights, a license, or immunity or other than only a monetary consideration for such license;

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

    8.1.2    the more favorable royalty rate applies only to products for which there is a claim of past infringement and is given in consideration of settlement of such claim;

    8.1.3    the more favorable royalty rate forms part of a settlement of an outstanding controversy other than past infringement; or

    8.1.4    LICENSEE elects to continue paying royalties on the basis set forth in this Agreement.

### Section 9.0  License to DVA

9.1    LICENSEE grants to DVA and its **Affiliates** an irrevocable, worldwide, non-exclusive, royalty-free license under LICENSEE's patents and patent applications to make, have made, use, lease, sell or otherwise **Transfer** products corresponding to the **Licensed Products** defined herein, and to make, have made, use or have used **Manufacturing Apparatus** in the manufacture of such products and to practice or have practiced **Manufacturing Processes** in the manufacture of such products. Said license to DVA and its **Affiliates** shall be effective as of the date LICENSEE first pays royalties in accordance with Section 5.0 hereof. Said license shall be with respect to all of LICENSEE's patents and patent applications, including utility models, design patents, divisionals, reissues, extensions, continuations, and reexaminations, under which patents and patent applications LICENSEE now has or hereafter, during the term of this Agreement, obtains the right to grant licenses to DVA of the scope granted herein.

9.2    The license as set forth in Section 9.1 shall not apply with respect to any patent of LICENSEE, if such grant would result in the payment of royalties by LICENSEE to third parties, except for payments to **Affiliates** of LICENSEE and payments to third parties for inventions made by said third parties while employed by LICENSEE or any of its **Affiliates**.

### Section 10.0  Assignments

10.1    LICENSEE shall not assign any of its rights or privileges hereunder without the prior written consent of DVA, except to a successor in ownership of all or substantially all the assets of LICENSEE, which successor expressly assumes in writing the performance of all the terms and conditions of this Agreement to be performed by LICENSEE as if it were named herein in the place of LICENSEE. After any such assignment, LICENSEE shall no longer be licensed hereunder.

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

### Section 11.0  Term of Agreement; Termination

11.1  Subject to Section 11.5 below, the term of this Agreement shall be from the effective date hereof until the expiration of the last to expire of the **Licensed Patents**, unless previously terminated as hereinafter provided.

11.2  LICENSEE may terminate the license granted herein, but only in its entirety, at any time by giving notice in writing to DVA. Such termination shall be effective on the date such notice is received by DVA.

11.3  DVA shall have the right to terminate this Agreement in the event:

11.3.1  LICENSEE fails to make any payment when due under this Agreement and such payment is not made within sixty (60) days of written notice from DVA; or

11.3.2  LICENSEE defaults under any term of this Agreement, other than a default involving the payment of money, which default is not cured within thirty (30) days of written notice from DVA; or

11.3.3  LICENSEE becomes insolvent or admits in writing its inability to pay its debts as they mature or makes an assignment for the benefit of creditors; or

11.3.4  LICENSEE files a petition under any foreign or U.S. bankruptcy law.

The rights and remedies set forth in this section are not exclusive and are in addition to any other rights and remedies available to DVA under this Agreement or at law or equity.

11.4  In the event this Agreement or the license granted hereunder shall be terminated pursuant to this Section 11.0 or assigned pursuant to Section 10.0, the corresponding sublicenses granted to **Affiliates** of LICENSEE pursuant to Section 3.3 shall likewise terminate, but no notices need be given by DVA to such **Affiliates**.

11.5  Any expiration or termination of this Agreement pursuant to this Section 11.0, or any termination of a sublicense pursuant to Section 3.3, shall not relieve LICENSEE of any obligation or liability accrued hereunder prior to such termination (including, without limitation, the obligations set forth in Sections 5.0, 6.0 and 7.0), or rescind or give rise to any right to rescind anything done by LICENSEE or any payments

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

made or other consideration given to DVA hereunder prior to the time such termination becomes effective, and such termination shall not affect in any manner any rights of DVA arising under this Agreement prior to such termination.

**Section 12.0  Payments, Notices and Other Communications**

12.1  Any notice or other communication pursuant to this Agreement shall be made by registered airmail (except that registered or certified mail may be used where delivery is in the same country as mailing) and shall be effective upon receipt by the addressee. Such notice or communication shall be mailed to:

    12.1.1  In the case of DVA:

        Dennis Fischel
        President
        DISCOVISION ASSOCIATES
        Post Office Box 19616
        Irvine, California 92713
        United States of America

    12.1.2  In the case of LICENSEE:

        Mr. Kumo Kikuchi
        Manager, Patent Department
        FUJI PHOTO FILM CO., LTD
        26-30 Nishiazabu 2-chome
        Minato-ku
        Tokyo 106
        Japan

12.2  LICENSEE's royalty reports, as described in Section 6.0 of this Agreement, shall be mailed via air mail to:

        DISCOVISION ASSOCIATES
        ATTN: Controller
        Post Office Box 19616
        Irvine, California 92713
        United States of America

        Fax No.: (714) 660-1801

A summary of the report, which states the total royalty to be paid, shall be sent by facsimile to DVA on, or before, the mailing of the complete report.

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

12.3   All payments set forth in Section 5.0 of this Agreement shall be paid via bank wire transfer to:

      Federal Reserve Bank of San Francisco
      For Credit to Sumitomo Bank of California
      San Francisco - Head Office
      ABA: 121002042

      For Further Credit to:

      The Sumitomo Bank, Ltd., Los Angeles Branch
      for Account of Discovision Associates
      ABA: 122003396
      Account Number:  046-133013-70

or by check payable to DVA and mailed via air mail directly to:

      DISCOVISION ASSOCIATES
      ATTN: Controller
      Post Office Box 19616
      Irvine, California 92713
      United States of America

### Section 13.0  Applicable Law

13.1   This Agreement shall be construed, and the legal relations between the parties hereto shall be determined, in accordance with the laws of the State of New York and, as applicable, the laws of the United States of America.

### Section 14.0  Miscellaneous

14.1   Nothing contained in this Agreement shall be construed as:

    14.1.1   requiring the filing of any patent application, the securing of any patents or the maintenance of any patents; or

    14.1.2   a warranty or representation by DVA as to the validity or scope of any Licensed Patent; or

    14.1.3   a warranty or representation that the manufacture, use, lease, sale, or other Transfer of any Licensed Product is free from infringement of any patents or other rights of third parties; or

7

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

  14.1.4 an obligation on the part of DVA to furnish any manufacturing or technical information, or any information concerning other licensees; or

  14.1.5 an obligation upon DVA to make any determination as to the applicability of its patents to any of LICENSEE's products; or

  14.1.6 a license with respect to any act which would otherwise constitute inducement of infringement or contributory infringement under United States patent law or its equivalent under any law foreign to the United States; or

  14.1.7 conferring any right to use, in advertising, publicity, or otherwise, any name, trade name, trademark, service mark, symbol or any other identification or any contraction, abbreviation or simulation thereof; or

  14.1.8 conferring any rights by implication, estoppel or otherwise, to or under copyrights with respect to any computer software under any present system of statutory protection or one hereinafter enacted in any country or countries, wherein the copying of such computer software is a requisite of infringement under such system; or

  14.1.9 an obligation to bring or prosecute actions or suits against third parties for infringement of any patent.

14.2 LICENSEE shall have the complete responsibility and shall use its best efforts to obtain all necessary approvals and validations of this Agreement, including all necessary approvals and validations for any products made, used or sold hereunder.

14.3 LICENSEE will sell and deliver to DVA, F.O.B. LICENSEE's shipping point, any **Licensed Product** ordered from LICENSEE by DVA and which is available for sale by LICENSEE. LICENSEE will also sell and deliver to DVA a copy of each manual (including, but not limited to, service, use and other technical manuals) relevant to a **Licensed Product** manufactured by or for LICENSEE, provided that, upon request by LICENSEE, DVA first delivers to LICENSEE a letter agreeing to hold such manual in confidence and to use it only for reverse engineering purposes. Any such sales will be at the same prices charged to LICENSEE's most favored customer.

14.4 The waiver by either party of a breach or default of any provisions of this Agreement by the other party shall not be construed as a waiver of any succeeding breach of the

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

same or any other provision, nor shall any delay or omission on the part of either party to exercise or avail itself of any right, power or privilege that it has or may have hereunder operate as a waiver of any right, power or privilege of such party.

14.5 It is the intention of both parties to make this Agreement binding only to the extent that it may be lawfully done under existing applicable law as identified in Section 13.0. If any sentence, paragraph, clause or combination of the same is in violation of any applicable law, that portion which is in violation shall be severed from this Agreement and the remainder of this Agreement shall remain binding upon the parties hereto, except that no license is granted, expressly or by implication, unless royalties are paid pursuant to Section 5.0.

14.6 Each party represents and warrants that it has the full right and power to enter into this Agreement and that there are no outstanding agreements, assignments, or encumbrances to which the representing party is bound which may restrict, or prohibit entry into, or performance under, this Agreement. DVA further represents and warrants that it has the full power to grant the license and release set forth in Sections 3.0 and 4.0. Neither party makes any other representations or warranties, express or implied, other than the representations set forth in Sections 3.3 and 4.2 regarding **Affiliates**.

14.7 The headings of the several sections are inserted for convenience of reference only and are not intended to affect the meaning or interpretation of this Agreement.

14.8 This Agreement may be executed in any number of copies, but all of such counterparts together shall constitute one and the same Agreement.

14.9 The parties hereto acknowledge that this instrument sets forth the entire agreement and understanding of the parties hereto and shall supersede all previous communications, representations and understandings, either oral or written, between the parties relating to the subject matter hereof, except prior written agreements signed by both parties, and shall not be subject to any change or modification except by the signing of a written instrument by or on behalf of both parties hereto.

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be duly signed as of the dates written below, to be effective as of the date first above written.

DISCOVISION ASSOCIATES

By: *[signature]* Dennis Fischel
Title: President

Witness: *[signature]*

Date: *[handwritten] September 28, 1995*

FUJI PHOTO FILM CO., LTD.

By: *[signature]* Mitsutaka Sofue
Title: Director

Witness: *[signature]*

Date: September 1, 1995

RTB:dh:BAS

Page 18 of 18

FUJIFILM - DISCS & RECORDABLE MEDIA-WW-073195

## APPENDIX A
## DVA PATENTS

| COUNTRY | PATENT NUMBER |
|---|---|
| AUSTRALIA | 480,148E |
| | 482,377E |
| | 505,168E |
| | 507,023E |
| | 512,873 |
| | 521,389 |
| | 521,410 |
| | 529,953 |
| | 530,499 |
| | 530,869 |
| | 531,127 |
| | 532,212 |
| | 532,366 |
| | 532,548 |
| | 532,569 |
| | 532,591 |
| | 532,903 |
| | 533,278 |
| | 533,280 |
| | 535,597 |
| | 536,076 |
| | 536,638 |
| | 536,882 |
| | 537,421 |
| | 538,745 |
| | 538,975 |
| | 539,526 |
| | 540,178 |
| | 540,861 |
| | 541,045 |
| | 541,212 |
| | 541,340 |
| | 543,367 |
| | 543,886 |
| | 544,892 |
| | 544,950 |

Note: Patent Numbers followed by an 'E' in this Appendix A represent patents which have expired.