UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

DISCOVISION ASSOCIATES,

                Plaintiff,

    v.

FUJI PHOTO FILM CO., LTD., a Japanese
corporation; FUJIFILM U.S.A., INC., a New
York corporation; FUJIFILM RECORDING
MEDIA MANUFACTURING U.S.A., INC., a
Delaware corporation; and FUJI MAGNETICS
GMBH, a German corporation,

                Defendants.

Index No.:  07-Civ.-6348 (PAC)

## PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND

TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................................. ii

I.    DVA'S COMPLAINT DOES NOT "ARISE UNDER" PATENT LAW AND
      PATENT LAW IS NOT A NECESSARY ELEMENT OF DVA'S
      WELL-PLEADED CLAIMS ....................................................................................... 1

II.   FUJIFILM RMM AND FUJIFILM US ARE NOT FRAUDULENTLY JOINED ........... 6

CONCLUSION ................................................................................................................... 8

40002240_1.DOC

TABLE OF AUTHORITIES

CASES

Additive Controls & Measurement Systems, Inc. v. Flowdata, Inc.,
  986 F.2d 476 (Fed. Cir. 1993)..................................................................................3

Arlaine & Gina Rockey, Inc. v. Cordis Corp.,
  175 Fed. Appx. 329 (Fed. Cir. 2006)........................................................................4

Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.,
  339 U.S. 827 (1950)..............................................................................................2, 5

Christianson v. Colt Industries Operating Corp.,
  486 U.S. 800 (1988)..............................................................................................1, 3

Hazeltine Research, Inc. v. Automatic Radio Manufacturing Co.,
  77 F. Supp. 493 (D. Mass. 1948), aff'd, 176 F.2d 799 (1st Cir. 1949), aff'd, 339
  U.S. 827 (1950)...................................................................................................2-3

Highland Supply Co. v. Klerk's Flexible Packaging, B.V.,
  No. 05-CV-482-DRH, 2005 WL 3534211 (S.D. Ill. Dec. 21, 2005)............................4

Hunter Douglas, Inc. v. Harmonic Design, Inc.,
  153 F.3d 1318 (Fed. Cir. 1998)................................................................................3

Kleinerman v. Luxtron Corp.,
  107 F. Supp. 2d 122 (D. Mass. 2000) ......................................................................4

Luckett v. Delpark, Inc.,
  270 U.S. 496 (1926)...............................................................................................2

Martin v. Franklin Capital Corp.,
  546 U.S. 132 (2005)...............................................................................................1

Owen Equipment & Erection Co. v. Kroger,
  437 U.S. 365 (1978)...............................................................................................2

Pampillonia v. RJR Nabisco, Inc.,
  138 F.3d 459 (2d Cir. 1998)................................................................................6, 8

Regents v. Glaxo Wellcome, Inc.,
  58 F. Supp. 2d 1036 (D. Minn. 1999).......................................................................4

Scherbatskoy v. Halliburton Co.,
  125 F.3d 288 (5th Cir. 1997) ...................................................................................4

40002240_1.DOC

U.S. Valves, Inc. v. Dray,
190 F.3d 811 (7th Cir. 1999) ...........................................................................................4

U.S. Valves, Inc. v. Dray,
212 F.3d 1368 (Fed. Cir. 2000).......................................................................................4

XCO International Inc. v. Pacific Scientific Co.,
No. 01 C 6851, 2003 WL 2006595 (N.D. Ill. Apr. 29, 2003)..........................................4

## STATUTES AND RULES

28 U.S.C. § 1295(a)(1).....................................................................................................1

28 U.S.C. § 1447(c) .......................................................................................................1, 8

Fed. R. Civ. P. 82 ..............................................................................................................2

Fed. R. Evid. 408(a)(2) ......................................................................................................6

Fed. Cir. Rule 32.1(c) ........................................................................................................4

## OTHER AUTHORITIES

13B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction & Related
Matters § 3582 (2d ed. 1984)...........................................................................................2

14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction & Related
Matters § 3721 (3d ed. 1998)...........................................................................................3

14C Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction & Related
Matters § 3739 (3d ed. 1998)...........................................................................................1

Plaintiff Discovision Associates ("DVA") respectfully submits this reply memorandum of law in support of its motion to remand this action to the State Court. For the reasons set forth below, in the accompanying declaration of Clay E. Gaetje ("Gaetje Decl.") and supplemental declaration of Robert T. Braun ("Braun Supp. Decl.") and in DVA's moving papers filed on August 27, 2007, this action should be remanded and, pursuant to 28 U.S.C. § 1447(c), DVA should be awarded its costs and actual expenses, including attorneys' fees, incurred as a result of Defendants' removal.[1]

I.

### DVA'S COMPLAINT DOES NOT "ARISE UNDER" PATENT LAW AND PATENT LAW IS NOT A NECESSARY ELEMENT OF DVA'S WELL-PLEADED CLAIMS

As the proponents of federal jurisdiction, Defendants have the burden of proof. E.g., 14C Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction & Related Matters § 3739, at 424 (3d ed. 1998) (quoted in Opening Memo at 1). Since they (Opp. Memo at 9) affirmatively disclaim any suggestion that federal patent law creates DVA's claims, they must argue that DVA's claims "necessarily" depend on a substantial question of federal patent law. See Christianson v. Colt Industries Operating Corp., 486 U.S. 800, 809 (1988).[2] This means that they must conclusively prove that "patent law is a necessary element of one of the well-pleaded claims." Id. However, both as pleaded and as a state-law matter of contract interpretation, federal patent law is not an element of DVA's claims, "necessarily" or otherwise.

---

[1]    By their silence, Defendants apparently do not challenge the objective test for awarding costs and expenses under § 1447(c). Opening Memo at 8, citing Martin v. Franklin Capital Corp., 546 U.S. 132, 139-40 (2005).

[2]    Defendants (Opp. Memo at 8 n.4) complain that DVA "virtually ignores" Christianson (cited in DVA's Opening Memo at 4 n.3 for the proposition that an alleged federal patent-law defense cannot confer federal jurisdiction). Christianson involved claims for antitrust violations and tortious interference and raised issues of federal appellate jurisdiction as between the Seventh and Federal Circuits, with the Supreme Court ruling that there was no patent jurisdiction in the Federal Circuit under the 28 U.S.C. § 1295(a)(1). There was no license agreement at issue at all.

The parties appear to agree on two points:  (a) a license agreement may confer on the licensee the right to use a patent and may require payment of a royalty calculated without regard to whether the licensee in fact uses the patent and (b) a claim for breach of such an agreement is not within federal patent jurisdiction.  Opening Memo at 5; Opp. Memo at 12 n.5.  Exercising its right to choose the forum under the well-pleaded-complaint rule, DVA has asserted claims in its complaint based on Defendants' breaches of exactly such an agreement.[3]

Directly on point is <u>Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc.</u>, 339 U.S. 827 (1950), on which DVA relies.  Opening Memo at 5.  In <u>Automatic Radio</u>, the Court construed a license agreement to provide that

> "[w]hat [Petitioner] acquired by the agreement into which it
> entered was the privilege to use any or all of the patents and
> developments as it desired to use them.  If it chooses to use none of
> them, it has nevertheless contracted to pay for the privilege of
> using existing patents plus any developments resulting from
> respondent's continuous research."

339 U.S. at 834.  As the district court's opinion made clear, the license agreement in <u>Automatic Radio</u>, like the License Agreement here, required the licensee to pay royalties based solely on its sales of certain defined products (subject to a minimum annual royalty):

> "The contract involved here is essentially a grant by plaintiff
> of a privilege to defendant to use any patent or patent application
> which might be held by plaintiff in consideration for defendant's
> agreement to pay money.  It is different from most license
> contracts in that payment of royalties does not depend on the use of

---

[3]     If Defendants (Opp. Memo at 8-9 n.4) contend that <u>Luckett v. Delpark, Inc.</u>, 270 U.S. 496, 502 (1926), which DVA (Opening Memo. at 6) cites for the proposition that there may not be federal jurisdiction over a suit for royalties due under a license agreement, is no longer good law because it was decided before adoption of the Federal Rules of Civil Procedure in 1938, that would be news to the leading commentators on those rules, who prominently and favorably cite <u>Luckett</u> as the "leading case" on point.  13B Wright, Miller & Cooper, <u>Federal Practice & Procedure:  Jurisdiction & Related Matters</u> § 3582, at 302-08 (2d ed. 1984).  Indeed, one of the basic tenets of the federal rules was that they would <u>not</u> expand federal jurisdiction.  Fed. R. Civ. P. 82 ("These rules shall not be construed to extend or limit the jurisdiction of the United States district courts or the venue of actions therein."); <u>Owen Equip. & Erection Co. v. Kroger</u>, 437 U.S. 365, 370 (1978) ("it is axiomatic that the Federal Rules of Civil Procedure do not create or withdraw federal jurisdiction") (footnote omitted).

plaintiff's patents by defendant, but is required regardless of any use by defendant. This is a convenient mode of operation designed by the parties to avoid the necessity of determining whether each type of defendant's product embodies any of the hundred of patents which plaintiff controls. There is nothing inherently illegal in such an arrangement. H-P-M Development Corporation v. Watson-Stillman Co., D.C. 71 [F.]Supp. 906, 912. And non-use of the patents is not a defense to an action on the contract.

"The contract requires defendant to pay 1.05% (and in one case 2.1%) of its gross sales of certain specified apparatus, with a minimum of $10,000 per year. Computation in this manner is designed to avoid the difficulties mentioned above."

Hazeltine Research, Inc. v. Automatic Radio Manufacturing Co., 77 F. Supp. 493, 496 (D. Mass.

1948), aff'd, 176 F.2d 799 (1st Cir. 1949), aff'd, 339 U.S. 827 (1950).

Hypothetically, the parties here could have entered into a license agreement that would

have required payment of royalties only if Defendants actually used the Licensed Patents, thus

leaving the parties to contest later whether in fact there was such a use. The actual License

Agreement is not such a contract, and none of the cases on which Defendants rely for their

argument that the License Agreement is such a contract appear to involve contractual provisions

like those in the License Agreement.[4] In many of these cases, there was not a license agreement

of any sort between the parties. E.g., Additive Controls & Measurement Systems, Inc. v.

Flowdata, Inc., 986 F.2d 476, 478-79 (Fed. Cir. 1993) (business disparagement cause of action

based on defendant's statement that plaintiff's products infringed defendant's patent).[5] In some

---

[4]    Raising the state-law issue of contract interpretation at this stage, Defendants would embroil the Court in having to resolve the substantive merits of the litigation. See 14B Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction & Related Matters § 3721, at 331 (3d ed. 1998) ("the defendant may not use removal proceedings as an occasion to adjudicate the substantive issues of a case"). Upon remand, the State Court can interpret the License Agreement at the appropriate time.

[5]    See also Christianson, supra; Hunter Douglas, Inc. v. Harmonic Design, Inc., 153 F.3d 1318, 1329 (Fed. Cir. 1998) (plaintiff sought to invalidate defendants' patent and pleaded injurious falsehood claim based on defendants' assertion that they had exclusive rights based on patent).

of the others, the license agreement apparently defined "licensed product" only by reference to

what the patent covered. E.g., U.S. Valves, Inc. v. Dray, 212 F.3d 1368, 1370 (Fed. Cir. 2000).[6]

In still other cases, the contractual language was not provided in the court's opinion. E.g.,

Arlaine & Gina Rockey, Inc. v. Cordis Corp., 175 Fed. Appx. 329 (Fed. Cir. 2006), a pre-2007

decision that in any event is "nonprecedential" and not citable under Federal Circuit Rule

32.1(c).[7]

Defendants (Opp. Memo at 12-13) contend that the parties' License Agreement requires

them to pay royalties only if they deal in Licensed Products that actually used the Licensed

Patents. They claim to find support for their position in § 5.1 of the License Agreement, which

provides as follows:

> "LICENSEE shall pay, as hereinafter provided, earned royalties to
> DVA with respect to either of the following for:
>
> "5.1.1  each **Licensed Product** for which LICENSEE is licensed
> hereunder in the country of manufacture; or
>
> "5.1.2  each **Licensed Product** for which LICENSEE is licensed
> hereunder in the country of use, lease, sale or **Transfer**."

In each of these subsections, "Licensed Product for which LICENSEE is licensed hereunder"

means the various products listed in § 2.7, i.e., Digital Discs, Video Discs and Recordable

Media, terms defined in §§ 2.3, 2.4 and 2.6, respectively, without regard to use of any of the

Licensed Patents defined in § 2.10 and listed in Appendix A. Because DVA gave Defendants the

right to use the Licensed Patents (§ 3.1), they can make, have made, use, lease (rent), sell or

---

[6]  See also U.S. Valves, Inc. v. Dray, 190 F.3d 811, 813-14 (7th Cir. 1999); Highland Supply Co. v. Klerk's Flexible Packaging, B.V., No. 05-CV-482-DRH, 2005 WL 3534211, at *1 (S.D. Ill. Dec. 21, 2005). As discussed below, the License Agreement here requires payments of royalties based on dealings in Licensed Products and defines Licensed Products in § 2.7 without reference to the Licensed Patents.

[7]  See also Scherbatskoy v. Halliburton Co., 125 F.3d 288 (5th Cir. 1997); Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122 (D. Mass. 2000); XCO Int'l Inc. v. Pacific Scientific Co., No. 01 C 6851, 2003 WL 2006595 (N.D. Ill. Apr. 29, 2003); Regents v. Glaxo Wellcome, Inc., 58 F. Supp. 2d 1036 (D. Minn. 1999).

otherwise transfer Licensed Products without risk that they otherwise would be infringing.  See License Agreement § 1.5 (basis of agreement is "relative value to one another of avoiding potential disputes over infringement of DVA patents and determination of royalties due on past, present and future sales") and the discussion of Automatic Radio at pp. 2-3 above.  Defendants must report and pay royalties to DVA on all activity involving Licensed Products, whether or not they have used the Licensed Patents.  License Agreement §§ 5, 6.

Defendants also claim to find support in § 3.2, which provides that "[n]o license is granted by DVA to LICENSEE in this Section 3.0, either expressly or by implication, estoppel, or otherwise, other than under the Licensed Patents."  This provision obviously is designed to preclude Defendants from arguing that they somehow obtained something other than the right to use the Licensed Patents listed in Appendix A; it says nothing about what activity triggers Defendants' royalty obligations or how they are to be computed.  As did the license agreement at issue in Automatic Radio, §§ 5 and 6 of the License Agreement straightforwardly cover those subjects and require reporting/paying on Licensed Products without regard to Defendants' actual exercise of their right to use the Licensed Patents.[8]

Indeed, the parties discussed this very aspect of how the License Agreement would work in the negotiations that led to its execution.  At that time, DVA made it clear (a) that Fujifilm Japan and its Affiliates would have the right to use any or all of the Licensed Patents and would report and pay royalties on all Licensed Products whether they used the Licensed Patents or not and (b) that, if Fujifilm Japan subsequently determined that it and its Affiliates were not using, or would no longer use, the Licensed Patents, it could simply cancel the License Agreement.  Braun

---

[8] Of course, if Defendants had believed that they actually were not using any of the Licensed Products, they could have canceled the License Agreement at any time under § 11.2 simply by notifying DVA.

Supp. Decl. ¶ 2.  Confirming the parties' shared understanding, Fujifilm Japan subsequently paid

royalties on Licensed Products acquired from third-party manufacturers even though it would not

have known whether the manufacturing processes that those third parties employed had used the

Licensed Patents.  Braun Supp. Decl. ¶ 3.

Finally, Defendants (Opp. Memo at 13-14) suggest that DVA acquiesced in the view that

royalties were due only for actual use of the Licensed Patents.[9]  This is absolutely false.  As part

of settlement discussions, Fujifilm Japan's representatives asked DVA to provide patent-claim

information that they could use to persuade Fujifilm Japan's senior management to settle.  Solely

for purposes of settlement discussions and never departing from its position that royalties were

due on all Licensed Products, DVA supplied patent-claim information at Fujifilm Japan's

request.  Gaetje Decl. ¶¶ 2-3 & Exh. A thereto.

II.

## FUJIFILM RMM AND FUJIFILM US ARE
## NOT FRAUDULENTLY JOINED

As DVA (Opening Memo at 7) previously explained, the Second Circuit set out the

applicable test for resolving accusations of fraudulent joinder in <u>Pampillonia v. RJR Nabisco,</u>

<u>Inc.</u>, 138 F.3d 459, 461 (2d Cir. 1998) (emphasis added; footnote omitted):

> "In order to show that naming a non-diverse defendant is a
> 'fraudulent joinder' effected to defeat diversity, the defendant must
> demonstrate, <u>by clear and convincing evidence</u>, either that there
> has been <u>outright fraud</u> committed in the plaintiff's pleadings, or
> that there is <u>no possibility</u>, <u>based on the pleadings</u>, <u>that a plaintiff
> can state a cause of action</u> against the non-diverse defendant in
> state court.  <u>The defendant seeking removal bears a heavy burden</u>
> of proving fraudulent join[d]er, and <u>all factual and legal issues</u>

---

[9]     Defendants proffer the Declaration of Tadayoshi Hirahara regarding the parties' settlement discussions to
try to prove that DVA's claim is invalid. Fed. R. Evid. 408(a)(2) makes such proffered evidence of "conduct or
statements made in compromise negotiations regarding the claim" inadmissible.

must be resolved in favor of the plaintiff."

Under § 3.3 of the License Agreement, Fujifilm Japan obtained the right to use DVA's Licensed Patents both for itself and for Affiliates it controlled, which at the outset Fujifilm Japan represented in § 4.2 of the License Agreement was only Fuji Magne-Disk Co., Ltd. ("Fuji Magne-Disk"). Fujifilm Japan also represented in § 3.3 that it had "the power to bind each such **Affiliate** to the terms and conditions of this Agreement" and agreed "to take whatever action is necessary to legally bind such **Affiliates**." Moreover, § 3.3 provided that "[e]ach **Affiliate** sublicensed under this Agreement shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of LICENSEE."

DVA alleges in its complaint that defendants Fujifilm RMM and Fujifilm US deal in Licensed Products and are bound by the License Agreement in accordance with the provisions described in the preceding paragraph. That is enough to preclude a finding of fraudulent joinder under <u>Pampillonia</u> and is not undone by Defendants' (Opp. Memo at 5-6) argument, notwithstanding § 3.3, that only "parties" to a contract can be liable for its breach. Fujifilm Japan controls Fujifilm RMM and Fujifilm US, and they are both beneficiaries of the License Agreement and bound by the same obligations thereunder as Fujifilm Japan. The same is true of Fuji Magne-Disk, which also did not sign the License Agreement and is not listed in its opening sentence (or elsewhere) as a "party". As § 3.3 provides, all Affiliates are "bound by the terms and conditions of this Agreement as if [they] were named [t]herein in the place of [Fujifilm Japan]."

Defendants (Opp. Memo at 7-8) argue, however, that unreported dealings in Licensed Products by Affiliates are not covered by the License Agreement unless Fujifilm Japan listed the Affiliates in Appendix B. This would make a shell game out of the License Agreement because it would allow Defendants to avoid all of their contractual responsibilities by the simple

-7-

expedient of creating new subsidiaries, undisclosed to DVA, to conduct all of the overall corporate enterprise's transactions in Licensed Products. Defendants must know that DVA would never have made such a deal, and indeed it did not. Braun Supp. Decl. ¶ 2.

Sections 5.4.1, 5.4.2 and 5.4.3 of the License Agreement expressly require payment on all transactions in Licensed Products "by or for [Fujifilm Japan] and/or its **Affiliates**." The royalty due is either pennies per optical disc or a small percentage of "Net Selling Price", which § 2.15 defines as "the invoice price after discounts actually allowed for a **Licensed Product** sold in **Arm's Length Trade** by [Fujifilm Japan] or its **Affiliate**." Section 2.13 defines "Affiliate" as "any corporation, company, or other business entity controlled by [Fujifilm Japan]." [Emphasis added.]

The clear intent behind the provisions cited above was that Fujifilm Japan would continue after January 1, 1995 to disclose, and to cause to be bound by the License Agreement, any Affiliate that dealt in Licensed Products, thus keeping current Fujifilm Japan's representation in § 4.2 that its list of Affiliates in Appendix B was accurate and complete. Fujifilm Japan's own failure to comply does not let Fujifilm RMM or Fujifilm US off the hook for their dealings in Licensed Products.

If there were any doubt, the Court would resolve all legal and factual issues in DVA's favor and require that Defendants show by clear and convincing evidence that there is no possibility, based on the pleadings, that DVA can state a cause of action against Fujifilm RMM and Fujifilm US as controlled Affiliates that deal in Licensed Products. Under this stringent test, it is plain that Defendants have not carried their heavy removal burden. See Pampillonia, supra.

CONCLUSION

For the reasons set forth above, in the accompanying declarations and in DVA's moving papers, this action should be remanded to the State Court and, pursuant to 28 U.S.C. § 1447(c),

-8-

DVA should recover its costs and actual expenses, including attorneys' fees, incurred as a result of Defendants' removal.

Dated:          Los Angeles, California
                October 12, 2007

                                        HUGHES HUBBARD & REED LLP

                                        William T. Bisset
                                        350 South Grand Avenue
                                        36th Floor
                                        Los Angeles, California  90071-3442
                                        Tel:  (213) 613-2881
                                        Fax:  (213) 613-2950
                                        email:  bisset@hugheshubbard.com


                                        HUGHES HUBBARD & REED LLP

                                        James B. Kobak
                                        One Battery Park Plaza
                                        New York, New York  10004-1482
                                        Tel:  (212) 837-6757
                                        Fax:  (212) 422-4726
                                        email:  kobak@hugheshubbard.com

                                        By      _____
                                                     William T. Bisset
                                                     Attorneys for DVA

## DECLARATION OF SERVICE BY FEDERAL EXPRESS

The undersigned declares:

I am, and was at all times herein mentioned, a citizen of the United States, a resident of the County of Los Angeles, over the age of 18 years and not a party to this proceeding. My business address is 350 South Grand Avenue, 36th Floor, Los Angeles, California 90071, and I am employed in the office of a member of the bar of this Court, at whose direction the service described herein was made. On October 12, 2007, I served the foregoing **PLAINTIFF'S REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND** by sending true copies thereof via Federal Express, Priority Overnight Service, all fees prepaid by sender, addressed as follows:

Steven J. Routh                         Eric J. Lobenfeld
Hogan & Hartson, L.L.P.                 Hogan & Hartson, L.L.P.
555 Thirteenth Street, N.W.             875 Third Avenue
Washington, D.C. 20004-1109             New York, New York 10022

I declare under penalty of perjury that the foregoing is true and correct. Executed in Los Angeles, California, this 12th day of October 2007.

*Diane J. Barondi*

40002240_1.DOC