UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DISCOVISION ASSOCIATES,

        Plaintiff,

v.

FUJI PHOTO FILM CO., LTD., a Japanese corporation; FUJIFILM U.S.A., INC., a New York corporation; FUJIFILM RECORDING MEDIA MANUFACTURING U.S.A., INC., a Delaware corporation; and FUJI MAGNETICS GMBH, a German corporation,

        Defendants.

Index No.: 07-Civ.-6348 (PAC)

**DECLARATION OF CLAY E. GAETJE**

---

CLAY E. GAETJE declares as follows:

1. I am a member of the California Bar and from November 1994 to May 2007, I was employed as a patent attorney by plaintiff Discovision Associates ("DVA"). I make this declaration in support of DVA's motion to remand this action to the Supreme Court of the State of New York for the County of New York from which Defendants removed it. The facts set forth herein are within my personal knowledge and, if called as a witness, I could testify competently thereto.

2. I represented DVA in a number of settlement discussions, at meetings and over the telephone, with representatives of defendant Fuji Photo Film Co. Ltd. ("Fujifilm Japan") concerning its obligations to DVA under the parties' License Agreement dated January 1, 1995. In none of these discussions did I or anyone else associated with DVA ever say that the License Agreement required Fujifilm to report and pay royalties only to the extent that it actually used DVA's Licensed Patents. I have always believed that Fujifilm Japan licensed the right to use

DVA's Licensed Patents and was required to report and pay royalties with respect to all Licensed Products whether or not the Licensed Products used the Licensed Patents.

3. I have read the declaration of Tadayoshi Hirahara dated September 25, 2007. I attended a settlement meeting with Mr. Hirahara and other representatives of Fujifilm Japan, including Fujifilm Japan's outside counsel, on June 26, 2006. At this meeting, Fujifilm Japan's representatives told me that, to help them persuade their senior management to settle, it would be helpful if DVA would provide evidence that optical discs that Taiwanese companies supplied to Fujifilm Japan and its Affiliates actually used the patents that DVA licensed to Fujifilm Japan under the License Agreement. DVA had assembled such evidence as part of its own direct discussions with certain Taiwanese manufacturers of optical discs. As a follow-up to the meeting and at Fujifilm Japan's request, I sent Mr. Hirahara patent materials that were substantively the same as what DVA had used in its discussions with the Taiwanese. I explained my purpose on page 2 of my cover letter to Mr. Hirahara:

> "We enclose claim charts for your convenience. Please understand that these claim charts are for settlement discussion purposes only, and are not intended for any other use. Additionally, DVA reserves the right to supplement or modify these claim charts, should additional information become available in the future.
>
> "Furthermore, although we are not averse to technical discussions, we are not submitting these claim charts at this stage of the negotiations to reopen such discussions. Rather, we are submitting them as partial reply to Mr. Sullivan's request to provide proof of the strength of our infringement positions, in order to help your discussions with management. We do, however, remain open and willing to answer any questions regarding these or any other claim charts we have provided."

A true and correct copy of my cover letter (without its enclosures) is attached hereto as Exhibit A.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 10, 2007.

_____
Clay E. Gaetje

EXHIBIT A

Case 1:07-cv-06348-PAC    Document 24    Filed 10/12/2007    Page 4 of 10



26787

July 28, 2006

**VIA FACSIMILE 011 81 3 3406 2171**
**DHL CONFIRMATION**

Mr. Tadayoshi Hirahara
IP Legal Div., R & D Management HQ
**FUJI PHOTO FILM CO., LTD.**
26-30, Nishiazabu 2-Chome
Minato-ku, Tokyo 106-8620
JAPAN

    Re:    DVA Homework

Dear Hirahara-san:

Thank you for your e-mail letter of July 19, 2006. This letter will respond to the information provided in that letter, and to the other open issues from our very productive meeting on June 26, 2006.

### Issues Raised in Your Letter

We appreciate the contact information for Daxon Technologies. This information will prove helpful in making contacts with the appropriate representatives, and will help us more quickly level the playing field by licensing Daxon.

Regarding the Paris meeting on October 23, 2000, I have spoken with Mr. Stolzman, who is no longer with our company. He remembers the meeting, although he has a different recollection. He agrees that Fuji Photo Film believed that the European subsidiary did not need to be licensed or added to the license, but differs in DVA's response to that belief. His recollection is that Fuji Photo Film was firm in their belief, and that any further attempts to change this belief through direct negotiation were fruitless. DVA then internally discussed other avenues to compel payment for the European subsidiary's sales, and, for various reasons, decided on the present course of action.

With respect to the year-by-year figures and the EM sales, we appreciate your efforts, and look forward to the information in due course. This information will be valuable in ascertaining a reasonable reduction, as described below.

### Effect of Almedio Settlement

In the meeting, you inquired whether the Almedio settlement included Fuji Photo Film

Mr. Tadayoshi Hirahara
IP Legal Div., R & D Management HQ
**FUJI PHOTO FILM CO., LTD.**
July 28, 2006
**Page 2 of 5**

products. Prior to May 16, 2002, the settlement does cover such products. For any products sold after May 16, 2002, the settlement does not cover them.

### Coverage of Mini-Disc

Several of your customers had inquired about DVA's patent coverage of Mini-Disc products from 2001 and extending into the future. Because Mini-Disc products are recorded using Eight-to-Fourteen Modulation (EFM), the same recording format used for CD discs and media, the Bailey family of patents discussed below apply. This family of patents applied in Japan until July 2002, and in the United States through January 2017. The United States patents are discussed below. There may be additional patents in other families during the early part of the applicable time period. If you need this additional information, please let me know.

### Bailey Family of Patents

With respect to the Bailey family of patents, CD recordable media is recorded according to the Orange Book. The Orange Book specifies that information may be recorded according to the data formats specified in the Red Book (for audio), Yellow Book (for data), or Green Book (for video). The following patents and claims apply to recording according to those formats:

    U.S. Patent 5,375,116 Claims 8-10, 20-23, 41-43, 47-49, 52, 54-55, 58-60
    U.S. Patent 5,459,709 Claims 1, 5-6, 10, 12
    U.S. Patent 5,587,983 Claims 1-3
    U.S. Patent 6,014,355 Claims 21-24, 30-31
    U.S. Patent 6,198,717 Claims 1-3, 13, 15-18

We enclose claim charts for your convenience. Please understand that these claim charts are for settlement discussion purposes only, and are not intended for any other use. Additionally, DVA reserves the right to supplement or modify these claim charts, should additional information become available in the future.

Furthermore, although we are not averse to technical discussions, we are not submitting these claim charts at this stage of the negotiations to reopen such discussions. Rather, we are submitting them as partial reply to Mr. Sullivan's request to provide proof of the strength of our infringement positions, in order to help your discussions with management. We do, however, remain open and willing to answer any questions regarding these or any other claim charts we have provided.

As additional materials in response to Mr. Sullivan's request, we have faced three primary arguments against the Bailey family of patents by recordable media manufacturers. None of these arguments are particularly persuasive, and none relates to any prior art validity

Mr. Tadayoshi Hirahara
IP Legal Div., R & D Management HQ
**FUJI PHOTO FILM CO., LTD.**
July 28, 2006
**Page 3 of 5**

challenge, since that issue was pretty well hashed out in our litigation described below. First, recordable media manufacturers argue that the media is blank, and does not infringe as sold. We agree, but under 35 U.S.C. § 271(c), recordable media manufacturers are liable as contributory infringers:

> Whoever offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use, shall be liable as a contributory infringer.

In our extensive discussions with many licensees over a period of years, no licensee has ever been able to provide an example of a different method of recording on CD media. Therefore, as the blank media is sold, recordable media manufacturers know the blank media are a material or apparatus for use in practicing a patented process (and also a component of a combination) especially made for use in an infringement of the above-listed patents, with no substantial noninfringing use.

Second, recordable media manufacturers argue that certain claims are not supported by the specification. This argument, at its heart, is an attack on the incorporation by reference of U.S. Patent 4,222,072 (known in the specification as Application No. 974,183). This argument was squarely presented to the Examiner during the prosecution of U.S. Patent 6,014,355, in an Amendment submitted on January 26, 1999, which reads in pertinent part:

> Applicant calls attention to the statement of incorporation by reference of U.S. Patent Application No. 974,138 [sic] on page 7 of the application now under examination. Application No. 974,138 [sic] issued as U.S. Patent No. 4,222,072. (p. 14)

The Examiner allowed the claims at issue, thereby rejecting the argument and accepting DVA's position that the incorporation by reference is proper. We have enclosed the Amendment and subsequent Office Action for your convenience.

Third, recordable media manufacturers point to a lawsuit that DVA filed against Disc Manufacturing, Inc. The lawsuit involved a patent in the Bailey family, U.S. Patent 5,373,490, as applied against prerecorded compact discs. The Court, in its opinion published as 25 F.Supp.2d 301 (1998), found that the particular claims in suit were not infringed by those products, relying on its <u>Markman</u> ruling. We include both the <u>Markman</u> ruling and the final decision for your convenience. The claims in suit, however, suffered from certain deficiencies which were not present in other patents in the family. Additionally, the Court opinion was submitted to the Examiner in an Information

Mr. Tadayoshi Hirahara
IP Legal Div., R & D Management HQ
**FUJI PHOTO FILM CO., LTD.**
July 28, 2006
**Page 4 of 5**

Disclosure Statement accompanying the above-mentioned Amendment, with the following clear statement:

> On October 26, 1998, an Opinion was issued by the United States District Court for the District of Delaware, in the action *DiscoVision Associates v. Disc Manufacturing, Inc.*, Civil Action no. 95-21-SLR, which related, in part, to U.S. Patent No. 5,373,490 ("the '490 patent"). The claims of the present application differ from those involved in the District Court of Delaware lawsuit. The guidelines of M.P.E.P. § 2001.06(c) do not appear to require disclosure of the District Court of Delaware decision in this application. Nevertheless, a copy of that Opinion is being submitted in an Information Disclosure Statement filed concurrently herewith. The Opinion specifically discussed the '490 patent, which is related to the pending application, on at least pages 1-3, 72-84, 109-113, and 138. (p. 14)

Again, the Examiner allowed the claims at issue, explicitly accepting DVA's position. DVA has faced no other arguments of any significance from recordable media manufacturers with respect to the Bailey family of patents. Please note that the page references in the above quotation refer to the pre-publication version of the opinion, not the published version we are enclosing. The substance is identical, but the page numbering is different.

**Offer of Settlement**

The final issue discussed at the meeting was Fuji Photo Film's request that DVA make a new offer of settlement based on the sales numbers provided at the meeting. Fuji Photo Film calculated that the amount owed from July 2000 through July 2005 was $3.94 Million.

This figure of $3.94 Million does not include any European sales, which we estimate from $2-4 Million. Taking the number most favorable to Fuji Photo Film, the unlicensed amount is estimated at $5.94 Million ($3.94 Million + $2 Million). Because we are now estimating, we will round off the number to $6 Million.

The figure provided does not include interest. Our original interest calculations from 2002 through 2004 yielded a total interest amount of about 40% of the total owed. Because the Net Selling Prices would be higher in 2000-2001 than 2002-2004, we expect that the nominal amount owed for the earlier years would be higher than the later years. Additionally, these amounts would be subject to longer compounding of interest. Therefore, we estimate conservatively that the interest total for the amount owed would be around 50% of the total, or $3 Million. This brings the total estimate to $9 Million.

Fuji Photo Film management had asked for several favorable reductions, including application of the 0.35% rate and a similar pro rata reduction of the amount as in our

Mr. Tadayoshi Hirahara
IP Legal Div., R & D Management HQ
**FUJI PHOTO FILM CO., LTD.**
July 28, 2006
**Page 5 of 5**

previous offer. Our previous offer was contingent, for business reasons, on resolving the issue prior to March 31, 2006, so such an aggressive reduction unfortunately is not available anymore. Without specifically itemizing the reasons, we are able to offer a settlement of 50% of the amount estimated to be owed, or $4.5 Million.

### Next Meeting

We are currently planning to be in Japan in September, and propose to meet at your offices on Wednesday, September 13, 2006, at 3:00 p.m. We of course are available in the meantime to discuss by letter or telephone any of the above issues, including the settlement offer. Please confirm whether this meeting date and time are convenient for you, so that we can finalize our travel plans.

Sincerely,

**DISCOVISION ASSOCIATES**

Clay E. Gaetje
Supervising Patent Attorney

CEG/jj

26788

cc: Jeffrey Sullivan of Baker Botts **Via Facsimile 212-408-2501 & DHL Confirmation**

Enclosures

DECLARATION OF SERVICE BY FEDERAL EXPRESS

The undersigned declares:

I am, and was at all times herein mentioned, a citizen of the United States, a resident of the County of Los Angeles, over the age of 18 years and not a party to this proceeding. My business address is 350 South Grand Avenue, 36th Floor, Los Angeles, California 90071, and I am employed in the office of a member of the bar of this Court, at whose direction the service described herein was made. On October 12, 2007, I served the foregoing **DECLARATION OF CLAY E. GAETJE** by sending true copies thereof via Federal Express, Priority Overnight Service, all fees prepaid by sender, addressed as follows:

Steven J. Routh
Hogan & Hartson, L.L.P.
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109

Eric J. Lobenfeld
Hogan & Hartson, L.L.P.
875 Third Avenue
New York, New York 10022

I declare under penalty of perjury that the foregoing is true and correct. Executed in Los Angeles, California, this 12th day of October 2007.

Decl of Gaetje.DOC