UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
DISCOVISION ASSOCIATES,                           :

                Plaintiff,                    :
                                                           07 Civ. 6348 (PAC)
     - against -                             :   ORDER

FUJI PHOTO FILM CO., LTD.; FUJIFILM U.S.A.,:
INC.; FUJIFILM RECORDING MEDIA MFG.
U.S.A., INC.; and FUJI MAGNETICS GMBH,    :

                Defendants.                  :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HONORABLE PAUL A. CROTTY, United States District Judge:

       Plaintiff Discovision Associates ("DVA") seeks remand of this breach of contract action to New York State Court under 28 U.S.C. § 1447(c) because: (1) complete diversity does not exist pursuant to 28 U.S.C. § 1332; (2) removal is precluded under 28 U.S.C. § 1441(a); and (3) Plaintiff's claim does not arise under federal patent law so as to confer federal jurisdiction under 28 U.S.C. § 1338(a). Plaintiff also moves pursuant to 28 U.S.C. § 1447(c) to recover its costs and expenses incurred as a result of Defendants' removal. For the reasons stated below, Plaintiff's motion for remand to New York State Court is granted and its motion for costs and expenses is denied.

### I. BACKGROUND

       DVA and Defendant Fuji Photo Film Co., Ltd. ("Fujifilm") entered into a license agreement, effective as of January 1, 1995 ("License Agreement").[1] (License Agmt. 1) In the agreement, DVA granted Fujifilm a license to use or employ stipulated DVA patents ("Licensed Patents"). (License Agmt. §§ 2.10, 3.1-.3) In exchange, Fujifilm

---

[1] The License Agreement is appended to the original complaint. The complaint is attached as an exhibit to Defendants' notice of removal.

agreed to pay DVA royalties on income generated from three specified products: digital discs; video discs; and recordable media ("Licensed Products"). (License Agmt. §§ 2.7, 5.1)  The parties contemplated that the agreement would extend to Fujifilm affiliates and provided a framework in § 3.3 of the License Agreement for adding additional affiliates as sublicensees.  At the time the License Agreement became effective, however, the agreement extended to only one such affiliate, Fuji Magne-Disk Co., Ltd. (License Agmt. § 3.3, App. B)  As discussed more fully below, the parties have quite different interpretations of their contract rights and responsibilities.  This divergence, specifically with regard to the inclusion of additional Fujifilm affiliates and the payment of royalties, informs the Court's consideration of Plaintiff's motion to remand.

DVA filed this lawsuit in the Supreme Court of the State of New York on June 4, 2007 upon discovery that Fujifilm and several Fujifilm affiliates, including Defendants Fujifilm Recording Media Mfg. ("Fujifilm RMM") and Defendant Fujifilm U.SA., Inc. ("Fujifilm US") (collectively, the "Affiliate Defendants"), dealt Licensed Products without paying royalties to DVA. (Compl. 2)  DVA argues that, although the Affiliate Defendants were not listed as subject affiliates of Fujifilm under the original License Agreement, these uncompensated transactions nevertheless constitute a breach of contract. See infra Part II.A.2.

On July 11, 2007, Defendants removed this action to the Southern District of New York pursuant to 28 U.S.C. §§ 1441 and 1446.  Defendants argue that this Court has two independent bases for exercising subject matter jurisdiction over this matter.  First, Defendants contend that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332, despite the presence of non-diverse parties.  Plaintiff improperly joined the non-diverse

Affiliate Defendants, they argue, to frustrate diversity and thereby prevent removal of this action to federal court. Second, Defendants contend that, because Plaintiff's claims necessarily require resolution of a substantial question of federal patent law, the Court may exercise jurisdiction pursuant to 28 U.S.C. § 1338(a).

Plaintiff filed the present motion to remand on August 30, 2007.

## II. DISCUSSION

A cause of action originally filed in state court may be removed to federal court by the defendant when "the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). On the other hand, "[d]ue regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined." Finley v. United States, 490 U.S. 545, 552-53 (1989) (citations omitted). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute[s] narrowly, resolving any doubts against removability." Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1045-46 (2d Cir. 1991) (citing Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 108 (1941)); see In re Methyl Tertiary Butyl Ether Prods. Liab., 488 F.3d 112, 124 (2d Cir. 2007). When the party seeking remand challenges the jurisdictional predicate for removal, the removing party bears the burden of establishing its right to a federal forum by "competent proof." Ehrenspeck v. Spear, Leeds & Kellogg, 389 F. Supp. 2d 485, 488 (S.D.N.Y. 2005) (quoting R.G. Barry Corp. v. Mushroom Makers, Inc., 612 F.2d 651, 655 (2d Cir. 1979)). If the removing party fails to meet this burden, the action will be remanded to the

state court from which it was removed. See Hill v. Delta Intern. Mach. Corp., 386 F. Supp. 2d 427, 429 (S.D.N.Y. 2005).

Defendants argue that two independent bases of subject matter jurisdiction exist—the complete diversity of the parties and the existence of a federal question concerning patent law. The existence of either confers jurisdiction over this matter; remand is proper only if neither jurisdictional predicate applies. Therefore, the Court will discuss separately the two purported bases for its subject matter jurisdiction.

**A. Diversity Jurisdiction and Fraudulent Joinder**

1. Applicable Law

District courts enjoy diversity jurisdiction where, assuming the requisite amount in controversy is met, the suit is between "citizens of different States." 28 U.S.C. § 1332(a)(1). It is well-established that such jurisdiction is proper only when there is "complete diversity," which does not exist if any plaintiff is a citizen of the same state of any defendant. St. Paul Fire and Marine Ins. Co. v. Universal Builders Supply, 409 F.3d 73, 88 (2d Cir. 2005). Even if the parties are diverse, a defendant may not remove a case to federal court when it is a citizen of the state in which the action is brought. 28 U.S.C. § 1441(a).

"[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy." Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460-61 (2d Cir. 1988). In Pampillonia, the Second Circuit articulated the test for determining fraudulent joinder:

4

> [T]o show that naming a non-diverse defendant is a "fraudulent joinder" effected to defeat diversity, the defendant must demonstrate, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings, or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court.

Id. at 461. "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." Id.; see also Kuperstein v. Hoffman-Laroche, Inc., 457 F.Supp.2d 467, 471 (S.D.N.Y. 2006) (explaining that, to defeat a motion for remand based on a fraudulent joinder theory, defendant must meet "the highest standard of proof that the law imposes in civil cases") (internal quotation omitted). The legitimacy of joinder is determined on the basis of the pleadings alone. In re Rezulin Prods. Liab. Litig., 133 F. Supp. 2d 272, 284 (S.D.N.Y. 2001) (citing Pampillonia, 138 F.3d at 461).

2. Application

The Court must determine whether either of the two Affiliate Defendants are properly joined as defendants to this action. If proper, the inclusion of these defendants defeats removal jurisdiction. First, Fujifilm RMM is, like DVA, a citizen of Delaware for diversity purposes.[2] Thus, its presence destroys the complete diversity required by 28 U.S.C. § 1332(a)(1). Second, Fujifilm US is a citizen of New York. Under 28 U.S.C. § 1441(b), it is not entitled to remove this action to federal court because it is a citizen of the state in which the suit was originally filed. Defendants, therefore, must meet their

---

[2] Defendants apparently do not contest Plaintiff's characterization of the Affiliate Defendants' citizenship for jurisdictional purposes. The Court assumes, therefore, that the citizenship Plaintiff ascribes to each Affiliate Defendant is proper.

"heavy burden" to demonstrate that the Affiliate Defendants were fraudulently joined in order to state a proper basis for removal jurisdiction. See Pampillonia, 138 F.3d at 461.

The appropriateness of the joinder of the Affiliate Defendants appears to turn on an interpretation of Section 3.3 of the License Agreement:

> The license granted herein shall include a sublicense to LICENSEE's Affiliates, identified in Appendix B, which are LICENSEE's Affiliates as of the effective date of this Agreement. LICENSEE shall pay and account to DVA for royalties hereunder with respect to the exercise by any Affiliate of LICENSEE of the sublicense granted to it hereunder. Sublicenses will be granted to additional Affiliates of LICENSEE during the term of this Agreement upon receipt by DVA of written notices from LICENSEE setting forth the names and addresses of such additional Affiliates to be covered by this Agreement, provided each such notice is given before any sales of Licensed Products by the Affiliate named therein. Each Affiliate sublicensed under this Agreement shall be bound by the terms and conditions of this Agreement as if it were named herein in the place of LICENSEE. LICENSEE represents to DVA that it has the power to bind each such Affiliate to the terms and conditions of this Agreement and agrees to take whatever action is necessary to legally bind such Affiliates. The sublicense granted to an Affiliate shall terminate on the date such Affiliate ceases to be an Affiliate.

At the outset, only Fuji Magne-Disk Co., Ltd. was listed as an affiliate in Appendix B. At no time during the existence of the contractual relationship were the Affiliate Defendants listed as sublicensee affiliates in Appendix B or otherwise formally granted sublicenses. (See Def. Opp'n 7-8)

The parties interpret § 3.3 very differently. According to DVA, Fujifilm was obliged, under § 3.3, to notify DVA if and when any Fujifilm affiliates dealt with Licensed Products. DVA claims that Fujifilm's failure to notify DVA that the Affiliate Defendants began dealing Licensed Products did not absolve those affiliates from duties under the License Agreement. It also points to §§ 5.4.1-.3, which expressly require payment on all transactions in Licensed Products "by or for [Fujifilm Japan] and/or its

6

Affiliates." The clear intent of these provisions, DVA concludes, "was that Fujifilm Japan would continue after January 1, 1995 to disclose, and to cause to be bound by the License Agreement, any Affiliate that dealt in Licensed Products." (Pl.'s Reply 8) Plaintiff argues that as Fujifilm-controlled "beneficiaries of the License Agreement," the Affiliate Defendants were "bound by the same obligations thereunder as Fujifilm []." (Pl.'s Reply 7)

Fujifilm counters that § 3.3 placed it under no obligation to notify DVA of subsequent dealings in Licensed Products by its affiliates. Instead, Fujifilm had the right to decide whether or not it wanted to extend the terms of the agreement to its affiliates.[3] Under this interpretation, the extension of the License Agreement to the affiliates was not automatic, as DVA contends; rather, the agreement bound the affiliates only upon Fujifilm's notification to DVA. In the absence of such notification, the Affiliate Defendants were never parties to the contract and cannot be named as defendants in an action claiming that they breached that contract. See A & V 425 LLC Contracting Co. v. RFD 55th Street LLC, 830 N.Y.S.2d 637, 643 (Sup. Ct. 2007) (noting that, generally, under New York law, "in order for someone to be liable for a breach of contract, that person must be a party to the contract") (citing Smith v. Fitzsimmons, 584 N.Y.S.2d 692 (App. Div., 4th Dept. 1992)); Henneberry v. Sumitomo Corp. of Am., No. 04 Civ. 2128, 2005 WL 991772, at *12 (S.D.N.Y. Apr. 27, 2005) ("defendants rightly point out that, in order to sue for breach of contract, plaintiff must be a party to the contract"). Moreover, Fujifilm contends that, even if it had some obligation to notify DVA pursuant to § 3.3, its

---

[3] Plaintiff makes a compelling argument that, under the Defendants' interpretation of § 3.3, it would be entirely possible for Fujifilm to shift all of its dealings regarding the Licensed Products to its non-licensed, fully-controlled affiliates and, in doing so, circumvent its responsibility to pay royalties under the License Agreement.

7

failure to do so "could not possibly render separate corporate entities . . . liable under the Patent License, nor could it somehow allow DVA to name them as defendants in this action." (Def.'s Opp'n 7-8)

Under the Pampillonia test, Defendants have not met their burden of demonstrating by clear and convincing evidence that there is no possibility that Plaintiff can state a cause of action against the Affiliate Defendants in state court.[4] Essentially, Defendants ask the Court to make a ruling that conforms to its interpretation of the License Agreement, but the Court is unwilling to do so. Construing the legal and factual issues in favor of the Plaintiff as it must, Pampillonia, 138 F.3d at 461, the Court finds that Plaintiff's reading of the contract with regard to affiliates is not so implausible as to obviate any possibility that it could maintain a cause of action against the Affiliate Defendants in New York State Court. This conclusion does not give greater credence to either party's interpretation; rather, it leaves that determination for the state court to make on the basis of a complete evidentiary record. If, at that time, the state court dismisses Plaintiffs' claims against the Affiliate Defendants, a second notice of removal is permissible.[5]

Accordingly, the Court rejects Defendants' argument that the Affiliate Defendants were fraudulently joined and holds that removal jurisdiction, predicated on diversity, does not exist.

---

[4] Defendants do not contend, nor is it reasonable to conclude, that Plaintiff committed "outright fraud" in joining the Affiliate Defendants in this action.

[5] A leading treatise notes that "if subsequent pleadings or conduct by the parties or various other circumstances brings a case that was not previously removable within the removal jurisdiction of the federal courts, a second notice of removal is permissible." 14C Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice & Procedure § 3739, 495-96 (3d ed. 1998); see Doe v. American Red Cross, 14 F.3d 196, 199-200 (3d Cir. 1993).

**B. Federal Patent Jurisdiction**

    1. <u>Applicable law</u>

Defendants argue that the Plaintiff's claims, though cast as state law breach of contract claims, actually arise under federal patent law. Defendants allege that this Court therefore has original jurisdiction over this action pursuant to 28 U.S.C. § 1338(a), which grants the district courts "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . . Such jurisdiction shall be exclusive of the courts of the states in patent . . . cases." Given this exclusive original jurisdiction, Defendants argue that removal is proper, pursuant to 28 U.S.C. §§ 1441(a)-(b).

A claim arises under the federal patent law if the complaint establishes either (1) that federal patent law creates the cause of action or (2) that plaintiff's right to relief necessarily depends on resolution of a substantial question of federal patent law. <u>Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.</u>, 535 U.S. 826, 830 (2002) (citing <u>Christianson v. Colt Indus. Operating Corp.</u>, 486 U.S. 800, 809 (1988)); <u>In re Tamoxifen Citrate Antitrust Litig.</u>, 466 F.3d 187, 199 (2d Cir. 2006). The determination of whether a claim arises under § 1338(a) must be made with reference to the complaint only, and not to any counterclaim asserted by defendant. <u>Holmes Group</u>, 535 U.S. at 831. "'[A] case raising a federal patent-law defense does not . . . arise under patent law, even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case.'" <u>In re Tamoxifen</u>, 466 F.3d at 199 (quoting <u>Christianson</u>, 486 U.S. at 809). "Moreover, even if one theory supporting a claim essentially turns on an issue arising under patent law, as long as there is at least one alternative theory supporting the claim that does not rely on patent law, there is no

'arising under' jurisdiction under 28 U.S.C. § 1338." Id.; see also Uroplasty, Inc. v. Adv. Uroscience, Inc., 239 F.3d 1277, 1279 (Fed. Cir. 2001) ("A claim supported by alternative theories in the complaint may not form the basis for section 1338(a) jurisdiction unless patent law is essential to each of those theories.").

2. Application

Plaintiff's claim alleges a breach of contract, not a patent claim.[6] It is less clear whether the Plaintiff's right to relief turns on the resolution of a substantial question of federal patent law. Defendants argue that "federal patent law is a necessary element of DVA's well-pleaded breach of contract claim because DVA must establish that Fujifilm's products practiced the Licensed Patents in order to establish its claims for breach of the Patent License." (Def.'s Opp'n 11)  Plaintiff counters that patent law is irrelevant to the resolution of its breach of contract claim, because "Fujifilm and its Affiliates must report and pay royalties if they make, have made, use, lease (rent) or otherwise transfer Licensed Products, whether or not in doing so they practice any patent they are licensed to practice." (Pl.'s Reply 5)  In short, the parties present another issue of contract interpretation.

DVA argues that the License Agreement was designed to avoid piecemeal patent disputes. Thus, DVA granted Fujifilm use of the Licensed Patents; and in return, Fujifilm paid DVA royalties on its activities concerning the Licensed Products, which may or may not have practiced the Licensed Patents.[7]  Essentially, Fujifilm bought peace of mind regarding the DVA patents, avoiding a product-by-product challenge to

---

[6] Defendants concede this point. (Def.'s Opp'n ).
[7] This basic contract scheme was approved in Automatic Radio Manufacturing Co. v. Hazeltine Research, Inc., where the Supreme Court construed a similar license agreement to provide (1) that the defendant obtained the privilege to use plaintiff's patents and (2) that the defendant must pay plaintiff royalties on certain products regardless of whether they practiced those patents. 339 U.S. 827, 834 (1950).

determine whether DVA's patent rights had been infringed.[8] Thus, according to DVA, a court is free to resolve the action without deciding an issue of federal patent law.

Defendants, however, claim a direct correlation between the Licensed Patents and the Licensed Products. On this reading, DVA received no royalties on dealings involving the Licensed Products unless those products practiced the Licensed Patents. Defendants point first to § 5.1, which directs payment of royalties for "each Licensed Product for which LICENSEE is licensed hereunder." To determine whether the product was "licensed hereunder," Defendants direct the Court to § 3.2, which states that no license is granted by DVA to Fujifilm and its affiliates "other than the licensed patents." Thus, Defendants conclude, "[b]ecause the Patent License does not grant Fujifilm a license 'other than under the Licensed Patents,'" and because no royalty duty is owed other than on . . . Licensed Products for which Fujifilm 'is licensed hereunder,' Fujifilm owes royalties only for . . . 'Licensed Products' that practice one or more of the Licensed Patents." (Def.'s Opp'n 12)

Here, again, the issue of federal jurisdiction depends on the proper interpretation of the License Agreement. Once again, the Court refrains from interpreting this contract on the basis of an incomplete evidentiary record. Mindful of its responsibility as to subject matter jurisdiction, Finley, 490 U.S. at 552-53, the Court resolves any doubt as to removability against Defendants, who assert the propriety of federal jurisdiction. Based on the parties' contentions, the Court cannot conclude that Plaintiff's construction of the License Agreement with regard to licensing is implausible. If Plaintiff's interpretation were to be vindicated, its suit would not touch on the patent laws of the United States;

---

[8] Under DVA's interpretation, this was the only way to serve the parties' stated goal of "avoiding potential disputes over infringement of DVA patents and determination of royalties." (License Agmt. § 1.5).

11

rather, it is a basic breach of contract action governed by state law.[9] As such, at least one arguable theory exists to support Plaintiff's claim that does not rely on resolution of a federal patent question. See In re Tamoxifen, 466 F.3d at 199. As the removing parties, Defendants have not demonstrated that Plaintiff's claim necessarily arises under federal patent laws. The Court's determination does not mean that one party's interpretation of the License Agreement is more plausible or correct than the other party's. It simply reflects the reality that this determination is better left to the New York court.

It is not clear to the Court that Plaintiff's claim arises under federal patent law, and the Court does not have jurisdiction pursuant to 28 U.S.C. § 1338(a).

Having already established that Defendants have not met their burden of establishing diversity jurisdiction, Part II.A, there is no predicate for the exercise of federal jurisdiction. Accordingly, this case must be remanded to New York State Court.

**C. Motion for Costs and Expenses**

Finally, Plaintiff seeks to recover its costs and actual expenses, including attorneys' fees, incurred as a result of Defendants' removal. The award of fees under 1447(c) is left to the Court's discretion. "Absent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied." Martin v. Franklin Cap. Corp., 546 U.S. 132, 140 (2005).

---

[9] "It is a general rule that a suit by a patentee for royalties under a license or assignment granted by him . . . is not a suit under the patent laws of the United States, and can not be maintained in a federal court as such." Luckett v. Delpark, Inc., 270 U.S. 496, 502 (1926); accord Bonzel v. Pfizer, Inc., 439 F.3d 1358, 1363 (Fed. Cir. 2006) ("The nature of this contract action does not change because the contract is a patent license and the assertedly failed contract obligation is the obligation to notify of patent infringement and share payment for infringement. These obligations do not "arise under" the patent law, in terms of a well-pleaded complaint.")

As the foregoing indicates, Defendants had an objectively reasonable basis to urge removal. Accordingly, the Court denies Plaintiff's request for fees.

## CONCLUSION

For the foregoing reasons, the motion to remand is GRANTED and the motion for costs and expenses is DENIED. The Clerk of the Court is directed to close this motion and this case.

Dated: New York, New York
October 29, 2007

SO ORDERED

*[signature]*

PAUL A. CROTTY
United States District Judge